(No. 33699.—)

ZELMA E. MYERS, Admx., Appellee, *vs.* STANLEY KRAJEFSKA, Appellant.

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

MONROE & McGAUGHEY, of Decatur, for appellant.

HENSON, MORTHLAND & HENSON, of Decatur, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Macon County in favor of appellee, Zelma E. Myers, as administratrix of the estate of her deceased husband, as plaintiff, against Stanley Krajefska, appellant, defendant below. Plaintiff's action as administratrix was based upon fatal injuries sustained by her deceased husband while riding as a guest in defendant's automobile. The cause was tried by the court without a jury, judgment was entered in favor of the plaintiff and defendant appeals to this court because the constitutionality of section 2 of the Wrongful Death Act is challenged. Ill. Rev. Stat. 1951, chap. 70, par. 2.

The complaint as amended charged that on June 14, 1953, defendant, Stanley Krajefska, drove his automobile on a certain Illinois highway, that decedent was riding with him as a guest, that decedent was free from contributory wilful and wanton misconduct, and that defendant was guilty of wilful and wanton misconduct by driving his automobile through a barricade and into a gravel hopper. Plaintiff charged defendant was guilty of one or more of the following acts: (a) failing to keep and maintain proper lookout, (b) failing to keep his automobile under proper

control and being unable to stop the same or keep his automobile on the right half of the highway to avoid running into and colliding with other vehicles and objects lawfully on said highway, (c) operating his automobile at a speed greater than was reasonable and proper, having regard to the traffic and the condition of the highway, and driving his automobile at a high rate of speed in violation of section 49 of the Uniform Act Regulating Traffic on Highways, (d) failing to have his automobile equipped with brakes adequate to control the movement of his automobile to prevent its colliding with other objects lawfully on said highway, (e) failing to sound his horn in violation of section 115 of said act, (f) operating his automobile while under the influence of intoxicating liquor, and (g) otherwise wilfully and wantonly operating and driving his automobile so as to cause injury and death to plaintiff's intestate.

Defendant's answer as amended denied the charges of wilful and wanton misconduct, denied decedent's freedom from contributory misconduct and charged sections 1 and 2 of the Wrongful Death Act are unconstitutional. Defendant filed no motions attacking plaintiff's complaint as amended.

The evidence at the trial showed that plaintiff and the decedent were married and at the time of his death plaintiff and four minor children survived. On the date of the occurrence decedent visited his wife at the hospital where she was awaiting the birth of their youngest child and from the hospital decedent went to the home of a brother-in-law where he had dinner. Decedent and the brother-in-law drove to a tavern in Macon where each had two bottles of beer. They then purchased six cans of beer which they took to the Macon race track. At the race track they met defendant and his girl friend. At the races defendant drank one can of beer and part of another and when the races were called, due to rain, the parties arranged to meet at the tavern in Macon. When they met at this

tavern each of the three men had a bottle of beer and after being there for half an hour they agreed to meet at a tavern in Pana. They drove south on Route 51 in defendant's automobile with defendant driving, his girl friend sitting to his right and decedent's brother-in-law to her right. Decedent sat in the rear seat. As they proceeded south at a point approximately two miles north of Moweaqua there was a bridge in a state of repair with barricades on both sides of it, with flares in front of them and a detour road leading around on the east side of the paved road. Signs both north and south of the bridge warned of the barricade and detour. As defendant travelled south on the highway after coming off the detour he saw four to six signs on the east side of the road.

The car stopped at Assumption where all the occupants except Myers went into a tavern. Here defendant and decedent's brother-in-law each had a bottle of beer. The evidence seems to indicate that Myers, the decedent, did not enter the tavern because he was asleep. Upon leaving Assumption the brother-in-law drove the car south for a mile or two and then defendant took over the driving and drove to a tavern at Pana. Decedent was still sleeping in the back seat of the car and only defendant and his girl friend entered this tavern. Here defendant had one or two bottles of beer and after a few dances they left. Defendant resumed driving his car with the girl friend in the center front seat and the brother-in-law of decedent to her right. Defendant drove north on Route 51 at a speed of approximately 50 to 60 miles per hour on the way back to Decatur. It had been raining and was misty at the time. The windshield wipers on defendant's car were working. As defendant proceeded north out of Moweaqua he saw the signs on the right hand side of the road indicating the detour ahead and approached the first sign at a speed of approximately 50 to 60 miles an hour. Defendant testified that when he was about nine car lengths south of the detour road an

oncoming car blinded him with its lights causing him to "hit the brakes all of a sudden." When the car started to swerve because of the slick pavement he let up on the brakes and as the other car passed defendant's car went through the barricade and into the hopper. Defendant stated that when he was about one and one-half car lengths from the barricade he again applied his brakes but there was gravel and mud on the pavement causing his car to slide as though it were on ice and that he continuously had his brake applied until he struck the hopper. Defendant was the only witness who testified to the version concerning the other car. The brother-in-law was dozing at the time of the occurrence and defendant's girl friend, now his wife, was in the hospital at the time of the trial, in confinement for the birth of her child. No reason was advanced for failure to take her deposition. The circumstantial evidence indicates the decedent was still asleep in the rear seat at the time of the occurrence. Circumstantial evidence, though not conclusive, of disinterested witnesses driving north on the same highway and arriving at the scene shortly after the occurrence indicates no other automobile going in the opposite direction passed these witnesses. The other evidence in the record related to the size and number of highway signs warning of the detour, the flares, the type of barricade, the size and weight of defendant's automobile and the size, weight and structural details of the gravel hopper. Certain witnesses testified as to the slippery and muddy condition of the highway near the scene. Plaintiff's father testified to seeing defendant the morning following the occurrence while visiting at the hospital, that he smelled alcohol, that defendant's tongue appeared to be thick and in his opinion defendant was under the influence of intoxicating liquor.

Defendant now urges that section 2 of the Wrongful Death Act is unconstitutional; that the judgment entered for plaintiff is contrary to the law and the evidence; and

that the trial court's judgment be reversed, or reversed and remanded.

It is defendant's contention that, in view of the decision of the United States Supreme Court in *First National Bank of Chicago* v. *United Air Lines, Inc.* 342 U.S. 396, the second proviso of section 2 of the Illinois Wrongful Death Act, which attempted to prohibit causes of action in this State for wrongful death occurring outside the State where a right of action existed and service could be had in that State, is unconstitutional. We have so held in *Allendorf* v. *Elgin, Joliet & Eastern Railway Co. ante,* p. 164, decided this day. Defendant reasons that it was the obvious intent of the legislature to exclude from the benefits of the Wrongful Death Act a certain class of persons and that, if this proviso alone be held invalid, the benefits of the act are then extended to a class of persons not within the intent of the legislature. Therefore, defendant concludes not only section 2 but the entire act is void. We have frequently held that although certain portions of an act of the legislature may be void, other portions may be valid, and that where the two are not so connected in subject matter and so dependent upon each other that the legislature would not be presumed to have passed the one without the other, the valid portions will be allowed to stand. *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236; *Grennan* v. *Sheldon,* 401 Ill. 351.

Defendant's rationalization contained in his reply brief urges that the entire act is unconstitutional and leaves in force only the statute as it existed prior to 1903 limiting plaintiff to damages in the amount of $5000. An examination of the Wrongful Death Act in its entirety reveals that the invalid proviso, which came into the act by amendment in 1903, is clearly severable and the valid and severable portions will therefore be enforced. (See *County of St. Clair* v. *Industrial Com.* 380 Ill. 376.) If that which remains

after the unconstitutional portion of a statute is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section or act unconstitutional. *Grasse* v. *Dealer's Transport Co.* 412 Ill. 179, *certiorari* denied 344 U.S. 837.

The record reveals that there is no proof as to some of the allegations of defendant's wilful and wanton misconduct. As to other charges it is fair to state that the record reveals such evidence although, as in many cases, it is conflicting. Defendant did not challenge the sufficiency of the allegations of wilful and wanton misconduct as pleaded. Where the trial court has heard the testimony and observed the witnesses we are not at liberty to disturb its judgment unless we can say that such judgment is manifestly against the weight of the evidence. (*Reese* v. *Laymon,* 2 Ill. 2d 614.) An examination of all the evidence leads us to conclude that the said judgment is not against the manifest weight of the evidence in this case.

Defendant urges that the definition of wilful and wanton conduct contained in the case of *Schneiderman* v. *Interstate Transit Lines, Inc.* 394 Ill. 569, is erroneous. We point out here that as used in the Illinois guest statute, section 42-1 of the Motor Vehicle Act, the statute employs the term "wilful and wanton misconduct." (Ill. Rev. Stat. 1951, chap. 95½, par. 58a.) Defendant states that the definition was originally borrowed from a Missouri case which confuses wilful and wanton conduct, negligence and the last clear chance doctrine. We have examined the various cases cited by defendant, and while it is to be noted that in many instances different wording, language and terminology is employed by the different courts in various instances, the basic general concept of the term as applied to the facts in the particular cases has remained essentially the same. The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act

was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved. The knowledge concerning other persons can be actual or constructive. As indicated by the decisions of other States which do not employ this term, it is generally considered in that area of fault between ordinary negligence and actual malice. In view of the fact that it is a matter of degree a hard and thin line definition should not be attempted. As stated in *Mower* v. *Williams,* 402 Ill. 486, "as to whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar."

Defendant urges that there is no evidence of the decedent's lack of contributory wilful and wanton misconduct. It is true that there is no positive, affirmative evidence as to what decedent did or did not do at the time of the actual occurrence and immediately prior thereto. However, the circumstantial evidence indicates that while decedent was riding in the rear seat he was still asleep. Under such circumstances proof of lack of contributory wilful and wanton misconduct may be made by circumstantial as well as by direct evidence. A greater or less probability leading, on the whole, to a satisfactory conclusion is all that can reasonably be required to establish controverted facts. *Devine* v. *Delano,* 272 Ill. 166; *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96.

For the foregoing reasons the judgment of the circuit court of Macon County is hereby affirmed.

*Judgment affirmed.*