(No. 34460.—

MARY E. HERING, Appellant, *vs.* GARLIN HILTON, Appellee.

*Opinion filed January 24, 1958.*

560

SCHAEFER and HERSHEY, JJ., dissenting.

LYBARGER & COLLINS, of Bushnell, and KEITH F. SCOTT, of Macomb, for appellant.

YOUNG & SULLIVAN, of Peoria, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed plaintiff, Mary E. Hering, leave to appeal from a judgment of the Appellate Court (13 Ill. App.2d 132) which reversed a judgment of the circuit court of McDonough County, entered on a jury verdict allowing plaintiff $7,000 as damages for personal injuries sustained in a collision between plaintiff's automobile and the truck driven by defendant, Garlin Hilton.

From the record it appears that on June 4, 1952, around noon, plaintiff Mary E. Hering, accompanied by her father, who died shortly after this accident, was driving the family car in an easterly direction on a State highway at a speed of about 55 to 60 miles per hour in the country area outside of Bushnell, Illinois. At about a mile and one-half west of Bushnell, the highway, which runs east and west, intersects a gravel road running north and south. Plaintiff testified that as she came over the bridge she saw defendant's truck on the south side of the gravel road, about two feet south of the concrete highway when her car was about 150 feet from the intersection. She stated that defendant was not looking in her direction and she

blew her car horn. The truck, however, merely increased its speed as it came onto the highway, so that when plaintiff's car reached the center of the intersection the left front side of her car collided into the middle of the truck, which kept moving in a northerly direction and pulled plaintiff's car along with it for several feet. Plaintiff also introduced evidence that defendant was fined for a right-of-way violation arising out of this collision, and her evidence relating to the permanent injuries she sustained was uncontroverted.

According to defendant's testimony, he was driving a Bushnell Township dump truck in a northerly direction along this gravel road, in the course of his work of cutting grass and weeds along the roadways, and had stopped the truck at the stop sign which was on the east side of the gravel road, some 31 feet south of the State highway. He stated that he waited for a truck coming from the east to turn in front of him, and then looked to the west and saw plaintiff's automobile approaching at a distance of about 75 to 80 rods. Believing that he had sufficient time to cross, he proceeded onto the intersection. The evidence is conflicting as to where the collision occurred, with defendant and his witness testifying that the truck was practically across the highway and some 7 or 8 feet onto the gravel road to the north, with only the rear wheels of the truck on the concrete, and with plaintiff testifying that the collision occurred at about the center of the highway.

Plaintiff's suit for damages was originally predicated on a single count charging defendant with negligence in the operation of the truck, which he denied. At the close of plaintiff's evidence, defendant filed an affirmative defense alleging that his work in maintaining the public roads for Bushnell Township relieved him from liability for negligence, and introduced evidence in support thereof. At the close of all the evidence the court allowed defendant's motion for a directed verdict on the basis of the affirmative de-

fense; whereupon plaintiff filed an additional count charging defendant with wilful and wanton misconduct. No further evidence was introduced. Defendant's motion for a directed verdict on the wilful and wanton count was denied, and the jury returned a verdict awarding plaintiff damages in the amount of $7,000. From the judgment entered thereon defendant appealed. The Appellate Court, considering only the propriety of the trial court's denial of the directed verdict on the wilful and wanton count, reversed the cause, and held that defendant was not guilty of such conduct as a matter of law.

Wilful and wanton misconduct has been defined in myriads of cases, each one reiterating or embellishing the phraseology of its predecessors. (*Streeter* v. *Humrichouse,* 357 Ill. 234; *Bartolucci* v. *Falleti,* 382 Ill. 168; *Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569; *Mower* v. *Williams,* 402 Ill. 486; *Myers* v. *Krajefska,* 8 Ill.2d 322, 328.) One ofted quoted definition is that set forth in *Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569, at p. 583: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." In the recent case of *Myers* v. *Krajefska,* 8 Ill.2d 322, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin-line definition could be made.

In the instant case, in determining whether the wilful and wanton count should have been submitted to the jury,

we must measure defendant's conduct by that standard. However, in so doing we cannot consider the conflicts in the evidence, nor its weight or preponderance, nor the credibility of witnesses, but must take that evidence as true which is most favorable to plaintiff's cause of action. (*Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569, 581.) If such evidence and its intendments most favorable to plaintiff tend to establish wilful and wanton misconduct by defendant, then defendant's motion for a directed verdict was properly denied.

Viewing defendant's conduct accordingly, it appears that although he did stop the truck at the stop sign and looked both ways with an unobstructed view, he nevertheless proceeded ahead onto the intersection, after noting plaintiff's car approaching from the west, and without looking again in that direction until the moment of the impact. Furthermore, according to plaintiff's testimony, defendant failed to heed the warning of her car horn, which she blew when her car was 150 feet from the intersection and when defendant's truck was still about two feet from the south edge of the highway, but merely accelerated his speed so that the cars collided in about the center of the intersection.

In evaluating defendant's conduct we are cognizant of the obligation of the driver of a vehicle approaching a preferred highway, which has been set forth in *Ritter, Admr.,* v. *Nieman,* 329 Ill. App. 163: "What is the purpose of a stop sign? Certainly, it does not signify that a motorist should stop, and then blindly proceed through a protected intersection without determining that he can do so with reasonable safety. The operator of a motor vehicle, when he stops at a preferred highway, should ascertain if he can proceed safely across such highway. If he can not, he should not enter it. Merely stopping some place near a stop sign does not necessarily discharge one's duty."

In the *Ritter case* the motorist claimed that he looked but did not see the approaching vehicle and therefore could

not be guilty of wilful and wanton misconduct. The court held, however, that it would not tolerate the anomaly of looking and not seeing, where there was no obstruction, and that since it was obvious that if defendant had looked he would have seen the vehicle, his conduct could be deemed wilful and wanton. If failing to look was wilful and wanton, as in the *Ritter case,* then proceeding ahead after actually seeing the vehicle approaching seems hardly less culpable.

Defendant argues, however, that he thought that he had time to cross the intersection, and that his action in driving ahead amounted only to an error of judgment rather than to wilful and wanton misconduct. With this we cannot agree. Labelling the conduct "an error of judgment" does not free it from the taint of wilful and wanton misconduct, but merely begs the question, for practically all such collisions could be attributed to errors of judgment, and the query in each case is whether such error of judgment was in disregard of dangers which should have been apparent to a reasonable man. It is apparent that defendant is guilty of another error of judgment in his estimate that the plaintiff's car was 1300 feet away when he was ready to proceed across the pavement. Making the generous assumption that defendant's truck traveled 50 feet before the collision, the plaintiff's car must have been driven at a rate of speed 26 times greater, for the two vehicles to have collided. As hereinbefore noted, defendant need not have intended that any harm should ensue, nor actually know for sure that there would be a collision; it is sufficient if he had notice which would alert a reasonable man that substantial danger was involved, and that he failed to take reasonable precautions under the circumstances. *Stephens* v. *Weigel,* 336 Ill. App. 36.

It is evident that the stop sign alerted defendant to the dangers of the intersecting highway, and imposed upon him a duty of waiting until he could traverse the preferred high-

way with safety. This the defendant failed to do. After his initial stop, he failed to keep a lookout, even though he knew that a vehicle was approaching from the west, and he entered the intersection without again looking in that direction to ascertain if it was safe to proceed, and without heeding the warning of plaintiff's car horn. Inasmuch as such conduct plainly involved an unreasonable risk with a high probability of danger, of which defendant should have had knowledge, the wilful and wanton count could have been properly submitted to the jury.

Defendant in the case at bar, however, has relied upon *Mower* v. *Williams,* 402 Ill. 486, where the verdict was directed for defendant on the wilful and wanton count. In that case the defendant was driving a State truck equipped with a red flashing light on the cab, and with a snow plow which cleared the pavement as the truck proceeded. Defendant stopped at the stop sign near the intersection, looked to the front and left for traffic, and asked his helper to look to the right, since his own view in that direction was obscured because the snow plow in the course of its operations had thrown snow and dirt on the right cab window and the right windshield. The helper opened the cab door and told defendant that it was safe to proceed. There were, however, cars approaching from the right, and when the blade of the snow plow reached the center of the north lane of the intersecting highway, it was struck by plaintiff's car, which skidded in the slush as plaintiff tried to stop. Although the court merely held that the evidence, when taken in its light most favorable to plaintiff, revealed no wilful and wanton conduct, without explaining why it reached that conclusion, it is submitted that the court may have reasoned that since the defendant had to rely upon his helper because his own view was obstructed by the snow and dirt on the windshield and window, and since the helper did open the door to look for approaching vehicles in that direction, all reasonable precautions were

taken, as far as defendant could observe, hence his failure to discover the danger of the approaching vehicle could not be deemed to be the result of his own recklessness or carelessness.

Defendant in the case at bar, however, exhibited no such care or precautions to avert danger. His view was in no way obstructed, and he proceeded across the intersection without again looking in the direction of the vehicle which he knew was approaching. Under such circumstances, the *Mower case* can hardly be deemed a determinative precedent, or involve conduct of a similar nature.

We must agree with plaintiff that the Appellate Court's misconception of why the trial court granted the directed verdict on the negligence count was material to the Appellate Court's conclusion that defendant was not guilty of wilful and wanton misconduct as a matter of law. Although the Appellate Court had already reached that conclusion from its analysis, nevertheless, it buttressed its conclusion with the observation that since the trial court did not even find evidence of negligence, defendant's conduct could hardly be wilful and wanton. However, as hereinbefore noted, the trial court granted the directed verdict on the negligence count, not because there was no evidence of negligence, as the Appellate Court apparently thought, but because of the affirmative defense that defendant's performance of a governmental function relieved him of liability for negligence, which issue was not considered by the Appellate Court. The trial court was misled by what was erroneously determined in the *Mower case* as to the affirmative defense, but this issue is not reviewable in the absence of a cross appeal.

On the basis of our analysis, therefore, the Appellate Court erred in weighing and considering the conflicting evidence in its review of the propriety of the denial of the directed verdict, and also erred in concluding that defendant was not guilty of wilful and wanton misconduct

as a matter of law in the light of the standard promulgated in the case law. Hence, the judgment of the Appellate Court must be reversed and the cause remanded to the Appellate Court with directions to reconsider the wilful and wanton issue in the light of the analysis presented herein, and to pass upon the remaining questions in the cause.

*Reversed and remanded, with directions.*

Mr. Justice Schaefer, dissenting:

I agree with the majority that *Mower* v. *Williams,* 402 Ill. 486, was in error. An employee who drives a motor vehicle for a governmental agency does not thereby become clothed with governmental immunity. To the extent that *Taylor* v. *City of Berwyn,* 372 Ill. 124, announces a rule like that of the *Mower case,* it is likewise in error.

But I dissent because I agree with the Appellate Court that the evidence shows no more than a mistake of judgment on the part of the defendant, and falls short of establishing wilful and wanton misconduct.

Mr. Justice Hershey joins in this dissent.