Walter Strunk et al., Appellees, v. Eva A. Stronberg, Impleaded as Rose Stromberg et al., Appellants.

Gen. No. 9,997.

Heard in this court at the February term, 1945. Opinion filed May 28, 1945. Opinion modified and rehearing denied July 19, 1945. Released for publication July 19, 1945.

SEARS, O'BRIEN & STREIT, of Aurora, and ARTHUR H. SHAY, of Streator, for appellants; BARNABAS F. SEARS, EDWARD F. STREIT and RALPH C. PUTNAM, JR., all of Aurora, of counsel.

HIBBS & POOL, of Ottawa, for appellees.

Mʀ. Jᴜsᴛɪᴄᴇ Wᴏʟғᴇ delivered the opinion of the court.

This appeal involves four suits, three for personal injuries and one for wrongful death resulting from the collision of the automobile in which the injured persons, and one killed were riding, and the automobile of defendant, Eva Stronberg, being driven at time of the accident, in opposite directions on U. S. highway No. 51. Eva Stronberg and her employee, James McGonigal, were riding on the front seat of her car. The car, in which Walter Strunk, Mamie Chambers, Margaret Chambers Moriarity, George Marcus Chambers and Darrell Chambers, the injured persons were riding, was owned by George Marcus Chambers, and was driven by his son, Darrell Chambers. The son is not a party to this suit. The accident happened on December 14, 1934. On January 22, 1935, the four complaints were filed in the circuit court of LaSalle county. The pleadings in the four cases are similar except for the usual wrongful death allegations in that suit.

The original complaints allege that on December 14, 1934, the defendant, Eva Stronberg, owned an automobile then being driven south on U. S. highway No. 51 toward the intersection of that highway and British Lane by the defendant, James McGonigal, as her agent; that plaintiff was then riding in an automobile being driven west on British Lane toward the intersection; that plaintiff and the driver of plaintiff's automobile, were exercising due care; that defendants negligently propelled and operated their automobile into the intersection and thereby struck plaintiff's automobile, causing personal injuries. The defendants' answers allege that Eva Stronberg and not McGonigal was driving her automobile; that plaintiff's automobile approached the intersection from the south; denies due care of plaintiff and his driver, and that Eva Stronberg negligently drove her automobile; alleges that the driver of the plaintiff's car, as agent of

the injured person, turned left at the intersection, without warning and without yielding the right of way contrary to the statutes, of the State of Illinois, thereby causing the collision, which both plaintiff and his driver could in the exercise of due care have avoided.

On October 23, 1942, the plaintiffs filed additional counts similar to the original complaints, but further alleged that the defendants were guilty of wilful and wanton misconduct as follows: The defendants, ''with conscious indifference to consequences and an utter disregard of the life, limb and safety of others lawfully using said highway, wilfully and wantonly, ran and drove said automobile towards and into said intersection at a high, excessive, dangerous rate of speed, to-wit, at the rate of 70 miles per hour, without keeping and maintaining a reasonable lookout for other automobiles and persons riding therein at and near said intersection of said two highways, by reason of which wilfulness and wantonness on the part of the defendants, the said automobile being so driven by said McGonigal, as aforesaid ran, and struck with great force and violence upon and against the automobile in which plaintiff was then and there riding . . . and thereby and then and there the said defendants wilfully and wantonly injured the plaintiff.''

The answers of the defendants specifically deny all the allegations of the additional counts. The answers allege an affirmative defense, that the plaintiff was injured as the result of plaintiff's wilful and wanton misconduct; that the accident occurred on a bright day, that U. S. highway No. 51 for a long distance north and south of the intersection was a straight level highway; that the Chambers' automobile was being driven north and stopped on the east half of the highway while the Stronberg automobile approached the intersection from the north, on the west half of the highway; that Darrell Chambers and plaintiff saw, or could

have seen by the exercise of due care, the Stronberg automobile approaching and that Darrell Chambers, contrary to subd. (5) of sec. 33, par. 34, ch. 95A of Cahill's Rev. Stat. for 1933, requiring him to give notice of his intention to turn left, and contrary to said statute requiring him to yield the right of way, wilfully and wantonly and without giving notice of his intention to do so, suddenly drove toward the west or northwest into the lane of the south bound traffic, in front of the Stronberg automobile, thereby causing the accident and the injuries complained of; that plaintiff's injuries, if any, were caused by the wilful and wanton misconduct of plaintiff and his agent, Darrell Chambers.

By stipulation of the parties, the trial court, consolidated the cases for hearing and a jury trial was had. At the conclusion of the plaintiffs' evidence, and again at the close of all of the evidence, the defendants moved for a directed verdict in their favor, and tendered instructions seeking withdrawal from consideration by the jury of the wilful and wanton count, filed on October 23, 1942. The court denied the motions and the instructions. The jury found the defendants guilty and assessed damages for each of the plaintiffs, in different amounts, aggregating $38,000. There was no special verdict, nor interrogatory submitted to the jury on the question of wilful and wanton misconduct of the defendants as charged in the additional count. Motions for judgments notwithstanding the verdicts, and for a new trial, were denied, and, after a remittitur of $2,000 on one of the verdicts, judgments were entered on the verdicts in favor of the plaintiffs. The defendants have perfected an appeal to this court.

■ The defendants having, by their tendered instructions, presented the issue to the court as to whether the wilful and wanton count should be considered by the jury, the trial court's refusal to with-

draw from the jury the consideration of defendants' alleged wilful and wanton misconduct constitutes reversible error, if there is no evidence tending to prove the wilful and wanton allegations of the additional count. The defendants have preserved the point in their motion for a new trial. (*Greene v. Noonan,* 372 Ill. 286.) Although the question of wilful and wanton misconduct is usually an issue of fact to be decided by the jury, if the evidence, viewed in the most favorable light for the plaintiff, does not tend to show wilful and wanton acts done without regard to the safety of others, a verdict should be directed in favor of the defendant. (*Morgan v. New York Cent. R. Co.,* 327 Ill. 339.) If there is no evidence in the record to support the allegations of wilful and wanton misconduct, the instructions tendered by the defendants should not have been refused and a verdict should have been directed with respect to the count charging wilful and wanton misconduct. (*Trumbo v. Chicago B. & Q. R. Co.,* 389 Ill. 213.)

█ █ It appears from the record that the plaintiffs were riding in a two-seated Chevrolet automobile belonging to George Marcus Chambers which (about 3:30 o'clock in the afternoon of December 14, 1934), was being driven toward the north on U. S. arterial highway No. 51 in the direction of British Lane, by Darrell Chambers, age 20 years, a son of George. Marcus Chambers. It was a clear day and the concrete pavement was dry. It was the intention of Darrell Chambers to drive toward the west into British Lane which extended east and west at a right angle to the highway. The highway in both directions, north and south of British Lane, was level and straight for a distance of about four miles. West of the intersection, British Lane was 66 feet wide with a gravel roadbed 36 feet wide. Highway No. 51 was paved with concrete 18 feet wide with the usual black mark extending lengthwise along the center. Darrell as he approached

the intersection, drove the Chambers' car on the east side of the pavement. When the car arrived near the southeast corner of the intersection, Darrell stopped it on the east side of the pavement. Two automobiles on highway No. 51 were approaching the intersection from the north at the time the Chambers' car was standing where it had stopped. The automobile closer to the intersection, coming from the north, was being driven by one Smith Davis on the west side of the pavement, at the rate of 40 to 45 miles per hour. Davis reduced the speed of his car as he came near the intersection and passed the Chambers' car. The other car coming from the north and approaching the intersection was a Plymouth sedan owned by defendant, Eva Stronberg. It is the testimony on behalf of the plaintiffs that defendant, James McGonigal, was driving the Stronberg car. The Stronberg car was travelling on the west side of the pavement at the speed of 65 to 70 miles an hour, which speed was maintained until there was a collision of the Chambers' car and the Stronberg car. There is negative testimony to the effect that they did not hear a horn sounded, nor brakes applied to the Stronberg car before reaching and while entering the intersection.

By sec. 33, ch. 121, Smith-Hurd Ill. Rev. Stats. 1933, it is provided as follows: "(5) No driver of a vehicle shall suddenly stop, or slow down without first signalling his intention with outstretched arm, or otherwise to those following closely in the rear nor shall he turn without signalling in a similar manner both to those following closely and those approaching from the opposite direction."

Darrell Chambers, without giving a signal indicating that he was about to drive the Chambers' car toward the west and across the west side of the pavement, shifted the gears of the car, drove the car west, or northwest, partly into British Lane. When the front of the Chambers' car was about eight feet off the west

side of the pavement, and moving into the lane, McGonigal drove the Stronberg car against the right rear fender and wheel of the Chambers' car. The plaintiffs were thrown from the Chambers' car, three of them were injured and Charles Marcus Chambers sustained fatal injuries. Two witnesses testified that the Stronberg car was approaching the intersection at the rate of 65 to 70 miles an hour when it was 500 to 600 feet from the intersection when Darrell drove the Chambers' car toward the west, into the right of way for automobiles being driven from the north toward the south on the highway. One of the witnesses who so testified was riding on the front seat of the Chambers' car on the right side thereof. The other witness was in a field and about 100 feet west of the highway and 150 feet south of the lane.

There is also evidence in the record on behalf of the plaintiffs that Eva Stronberg was sitting on the front seat of her car to the right of McGonigal and as he drove toward the intersection he had his head turned toward Eva Stronberg.

The evidence shows that when the Stronberg car was from 500 to 600 feet from the Chambers' car, and moving at the rate of 60 to 70 miles an hour, Darrell Chambers drove his car into the course of the car of the defendants. The driver of the Stronberg car had the right to assume that the driver of the Chambers' car would yield the right of way to him or by signal give notice of his intention to make a left turn in front of the Stronberg car. There was no such signal given by Darrell Chambers.

There is no direct evidence, nor facts nor circumstances in evidence from which the legitimate inference may be drawn, that the defendants knew, or by the exercise of reasonable care could have known, that the driver of the Chambers' car was about to drive his car into British Lane at the time the Stronberg car approached the intersection. The driver of the Stron-

berg car was not bound to anticipate that the Chambers' car would be driven in front of him in his lane of travel. He was entitled to act on the assumption that the driver of the Chambers' car would yield to him the right of way. It is no answer to this proposition to reply that the driver of the Chambers' car used his best judgment to determine if he had sufficient time to turn and pass safely in front of the other car, considering the distance the cars were from each other and the speed of the car coming toward him. Nor is it sufficient to say on behalf of the plaintiffs that the driver of the Chambers' car had a right to assume that the other car was approaching at a "lawful" rate of speed. Darrell Chambers, testified that he glanced at the Stronberg car when it was 500 or 600 feet away and then drove across the highway without again looking at the Stronberg car as it approached him. As above stated, two other witnesses saw the car approaching the intersection at the rate of 60 to 70 miles per hour when it was 500 or 600 feet from the intersection. Darrell Chambers was required to use ordinary care, commensurate with the danger then existing to determine whether he should, or should not, yield the right of way to the Stronberg car; and the driver of the Stronberg car had the right to rely on Darrell Chambers exercising such care.

It is our opinion that the defendants cannot be held liable for wilful and wanton misconduct, under the facts and circumstances appearing in evidence, unless the driver of the Stronberg car was operating it in a wilful and wanton manner after the defendants became aware of the perilous position of the Chambers' car there in the defendants' right of way. Or, that the defendants did not exercise reasonable care to see the Chambers' car in a position of peril in front of them in time to so operate their car to avoid striking the Chambers' car and then wilfully and wantonly drove their car against the Chambers' car. (*Morgan v. New York Cent. R. Co.*, 327 Ill. 339.)

As before stated, McGonigal had the right to assume that Darrell Chambers, acting as a reasonable and prudent person, would yield the right of way to him as he drove the car in his lane of travel while the Chambers' car stood at the intersection apparently waiting for the Stronberg car to pass through the intersection. McGonigal could not be held for a greater degree of care, under the circumstances, than to use reasonable care to discover that the plaintiffs were in a position of danger and not to wilfully and wantonly drive their car against the Chambers' car. (*Morgan v. New York Cent. R. Co.,* 327 Ill. 339.)

By sec. 22, ch. 121 of Smith-Hurd Ill. Rev. Stats., 1933, it was also provided, in part, as follows: that if the speed of a motor vehicle, outside the limits of an incorporated city, town or village exceeds the speed of 45 miles an hour, "such speed shall be prima facie evidence that the person operating such motor vehicle or motor bicycle is running at a rate greater than is reasonable and proper having regard to the traffic and use of the way or so as to endanger the life or limb or injure the property of any person." Our Supreme Court has held in the cases of *Bartolucci v. Falleti,* 382 Ill. 168, and *Clarke v. Storchak,* 384 Ill. 564, that a failure to comply with a speed statute for automobiles does not necessarily establish wilfulness or wantonness. The rate of speed and the attending circumstances must also be taken into consideration. The view of the witness Strunk, who was seated on the right side of the front seat of the Chambers' car, who testified that McGonigal had his head turned toward Eva Stronberg as he drove toward the intersection, was only momentary. Other evidence relative to this circumstance does not appear in the evidence, excepting the denial of McGonigal that he was driving the car at the time and before the accident.

There is no evidence tending to prove that McGonigal acted with such a degree of negligence that from his knowledge of the conditions and surrounding cir-

cumstances he must have been conscious that his conduct would naturally and probably result in injury to the plaintiffs and yet acted in utter disregard of their safety. The evidence viewed in its most favorable light for the plaintiffs, does not tend to show a wilful and wanton act done without regard to the safety of others. (*Morgan v. New York Cent. R. Co.*, 327 Ill. 339; *Trumbo v. Chicago, B. & Q. R. Co.*, supra.)

The judgment of the trial court is reversed and the case remanded.

*Judgment reversed and remanded.*